UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC,<br><br>    Plaintiffs,<br>and<br><br>Zhejiang Jingli Bearing Technology Co., Ltd.,<br><br>    Plaintiff-Intervenor,<br> v.<br><br>United States.<br><br>    Defendant. | Ct No. 23-00020 |

**REPLY OF PLAINTIFFS
SHANGHAI TAINAI BEARING CO., LTD. AND
C&U AMERICAS, LLC, TO RESPONSE OF DEFENDANT**

                David J. Craven, Esq.
                CRAVEN TRADE LAW LLC
                3744 N Ashland Avenue
                Chicago, Illinois 60613
                Tel. 773-709-8506
                David.craven@tradelaw.com
                Counsel for Plaintiffs

Dated: October 19, 2023

## Table of Contents

Table of Contents ......................................................................................................... i

Table of Authorities .................................................................................................... ii

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 1
   A. *Introduction* ................................................................................................ 1
   B. *Summary of Argument* ............................................................................... 1

II. ARGUMENT ........................................................................................................ 2
   A. *The Department's Application of Partial Adverse Facts with an Adverse Inference is Not Supported by Substantial Evidence and is not Consistent with Past Practice* ............................................................ 2
   B. *The Department Cannot Take Adverse Inferences Against Tainai for the Non-cooperation of Unrelated Suppliers* ........................................ 4
   C. *The Department Cannot Fill the Gap with Partial AFA* ........................... 8
   D. *The Department Should Not Have Deducted Section 301 Duties from U.S. Price* ............................................................................................ 9
   E. *The Department Should Not Have Capped Payments Received from Tainai's Customers for 301 Duties* ................................................. 10
   F. *The Department Should Have Granted a By-Product Offset* .................. 10

III. CONCLUSION .................................................................................................. 11

## Table of Authorities

*Court Cases*

*Nippon Steel Corp. v. United States*, 337F.3d 1373 (Fed. Cir. 2003) .............7

*Shanghai Tainai Bearing Co., Ltd. v. United States,* Ct. No. 22-00038,
  (Slip Op. 23-132, Ct. Int'l Trade, Sept. 14, 2023) .........................1,2,9

*Venus Wire Industries Pvt. Ltd. v United States,* 417 F.Supp.3d 1289
  (Ct. Int'l Trade 2020) at 1307-1308 ......................................................6

*Other Authorities*

Rule 56.2 of the Rules of the U.S. Court of International Trade ............................1,2

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

   A. *Introduction*

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade and the Court's Scheduling Order of May 3, 2023, Plaintiffs Shanghai Tainai Bearing Co., Ltd and C&U Americas, LLC respectfully submit this reply to the Response of defendant United States of America to the Motion and Memorandum presented by plaintiffs ("Def. Resp."). As demonstrated below, the arguments submitted by the defendant are unavailing or have already been resolved by the Court in earlier litigation. This matter should be remanded to the Department of Commerce with direction that the Department recalculate the margin and cash deposit rate for plaintiffs and consolidated plaintiffs.

   B. *Summary of Argument*

The primary issues in this appeal are not complicated and most of these issues have been resolved by litigation involving the most recent prior period of review. (See *Shanghai Tainai Bearing Co., Ltd. v. United States,* Ct. No. 22-00038, (Slip Op. 23-132, Ct. Int'l Trade, Sept. 14, 2023)  In matter presently at the bar, the Department calculated a margin based on partial facts available with adverse inferences due to the failure of certain unrelated suppliers to Tainai to cooperate with the Department. There is clear and uncontroverted evidence that plaintiffs fully cooperated to the extent that they had information and provided all of the information

1

in their possession. There is also no evidence that plaintiffs had sufficient power to force cooperation with the Department requests by its unaffiliated suppliers. There is evidence of substantial efforts by Tainai to obtain cooperation as one of the unaffiliated suppliers cooperated in this review. In its response, the Department ignores the facts of record and focuses on general legal principles which are not in dispute and which ultimately do not apply.

The Department also erred in its treatment of the Section 301 duties. The Department both improperly required that the duties to be deducted in calculating U.S. price and also refused to include the full value of additional monies collected at the time of sale from the customers as "301 duties" but rather "capped" the addition to the money received by the amount of the 301 duties paid. The Court has examined, and resolved, this issue in *Shanghai Tainai Bearing Co., Ltd. v. United States,* Ct. No. 22-00038, (Slip Op. 23- 132 Ct. Int'l Trade, Sept. 14, 2023).

II.   ARGUMENT:

> A. *The Department's Application of Partial Adverse Facts with an Adverse Inference is Not Supported by Substantial Evidence and is not Consistent with Past Practice*

At pages 11-22 of the defendant's response to plaintiffs' motion for judgment pursuant to Rule 56.2 ("Def. Resp"), the defendant argues that it was appropriate to take partial facts available with an adverse inference. The failure to cooperate was attributed to Tainai on the basis that Tainai knew that they would have to provide

the information of the unrelated suppliers and that the Department had advised the Department of this requirement in its decision of January 10, 20**22.** (Def. Resp. at 15). A failure to provide this information would, in the view of the Department, show a failure to cooperate on the part of Tainai.  The Defendant also argued that Tainai had obfuscated the facts.

Such arguments are unavailing.  Initially, the "official warning" in the decision of January 2022 was made well after the end of the period of review. The period of review is from June 1, 2020 to May 31, 2021. (APPX1000)  As such, the fact that the Department may have "warned" Tainai, Tainai's warning was after the fact and Tainai could not "comply" with this warning with respect to this period of review.  In fact, the Section A questionnaire was submitted on October 13, 2021 (APPX1474), the Section D questionnaire was submitted on November 12, 2021 (APPX2123).  Furthermore, the simple fact is that Tainai tried to obtain the cooperation of its unaffiliated suppliers, but could not do so.

Secondly, the Department contends that "obfuscated" its response methodology and the identity of its unaffiliated suppliers.  This is not true.  Tainai, from the very first responses identified its unaffiliated suppliers and clearly stated the methodology it applied to calculate the FOP for such suppliers. See APPX080259 – 080260, APPX081712 – 081714.  In its argument the defendant claims that as plaintiffs did not provide all of the necessary information, there was a

3

gap in the record. This gap, defendant argues, was the result of plaintiffs' failure to cooperate fully with the Department's request for information. Thus,the Department had to resort of facts available with a partial adverse inference. Tainai submits that while a gap may exist, it should have been filed with facts available without adverse inferences. The failure, as noted by the Department, was not of information within the control of Tainai, but rather was information of unaffiliated suppliers that refused to respond. The Department then sought to fill this gap with information, based on adverse inferences, provided by Tainai's affiliated suppliers.

### B. The Department Cannot Take Adverse Inferences Against Tainai for the Non-cooperation of Unrelated Suppliers

At pages 11 to 12 of its response, the defendant argues that it was appropriate to take partial adverse inferences against Tainai as a result of the non-cooperation of Tainai's unrelated suppliers and Tainai's failure to provide such information. This argument was predicated on a number of points:

- The absence of a response from Tainai's component suppliers to questionnaires sent directly to the component suppliers by the Department of Commerce;
- The failure of Tainai to provide the FOP data of the component suppliers;
- The existence of numerous prior reviews of the order and thus the need for FOP is known and critical; and
- The erroneous conclusion that Tainai is a large producer as evidenced by the fact that it was a mandatory respondent in this administrative

review.

Defendant's arguments fail on a number of points.

Initially, the fact that Tainai accounted for the largest volume of exports during the POR does not mean that Tainai is particularly large. Rather, it merely means that Tainai is the largest exporter to the United States out of the limited pool of exporters subject to this particular administrative review. While the Department did not ask for information during the review respecting the relative size of Tainai, nor was the need for such data apparent during the review, the only evidence of record is that Tainai is not particularly large. In the surrogate value submission, the petitioner provided the financial statement for Timken Romania, a Romanian Bearing producer which is part of the Timken Group. This financial report lists total sales in 2019 of 442,074,574 Leu ($99,450,000 USD). APPX2531   In contrast, as noted in Tainai's 56.2 memo at page 21, the total income for Shanghai Tainai was far less than that of Timken Romania. (APPX80600).

In sum, there is no evidence that Tainai is, in the world of bearing producers, a large bearing producer and has the size to assert power over its suppliers.

Secondly, contrary to the assertions of the defendant, Tainai does not have sufficient market power to induce the cooperation of its unrelated suppliers. This is important. If Tainai does not have the power to induce cooperation, it would be

"potentially unfair to the {respondent}" to impose adverse facts.  As noted by the Court of International Trade in *Venus Wire*:

> Further, while *Mueller* recognizes that an unwillingness to export goods produced by an uncooperative supplier "would potentially induce {the supplier} to cooperate," the appellate court also stated that "if the {respondent} has no control over the noncooperating suppliers, a **resulting adverse inference is potentially unfair to the {respondent}**." The concept of "control," as discussed in *Mueller*, does not require actual control, but, instead, it requires Commerce to consider record evidence concerning the **practical ability of a respondent to induce the supplier's cooperation**.
>
> Here, Commerce did not adequately consider evidence tending to show that Venus's efforts to induce cooperation failed, at least in part, because of circumstances beyond Venus's control; to wit, the suppliers' own concerns that providing the cost information did not serve the suppliers' respective interests. Moreover, Commerce failed to point to any evidence indicating that Venus could induce its unaffiliated suppliers' cooperation. Instead, Commerce appeared to assume that Venus had leverage over its unaffiliated suppliers and simply failed to properly apply it. Commerce's reasoning is inconsistent with *Mueller*, which recognizes the possibility of inducing cooperation, but not the certainty.
>
> *Venus Wire Industries Pvt. Ltd. v United States,* 417 F.Supp.3d 1289 (Ct. Int'l Trade 2020) at 1307-1308 (emphasis added).

A critical question is determining whether a party has the power to compel another entity to provide information is the volume of purchases.  In this matter, Tainai does not have high volumes of purchases.  Tainai detailed this in its 56.2 memo at 6 and 7.  In this memo Tainai listed the percentages supplied by each supplier.  Further, at page 8 Tainai listed the significant suppliers and the related amounts.  Simply put, Tainai does not have the market power to compel these

6

unaffiliated entities to respond. Tainai asked these unrelated suppliers to cooperate and these suppliers said no.

The defendant cites to the Federal Circuit decision in *Nippon Steel Corp. v. United States*, 337F.3d 1373 (Fed. Cir. 2003) for the proposition that "best of its ability" includes adequate record keeping and then claims that since Tainai did not have the confidential business records of an unaffiliated party, Tainai did not engage in adequate record keeping. Tainai disagrees with this contention. Tainai maintained all of the information required by it in the ordinary course of business and provided all of the requested information in its possession to the Department. There is no allegation that Tainai failed to provide or withheld information in its possession. The information which Tainai was unable to provide was the highly confidential information of suppliers of certain components – which information would be of use to Tainai in negotiating purchases of components and if in the possession of Tainai, could be used to the detriment of the unaffiliated suppliers.

In fact, in this review, Tainai was able to convince one of its unaffiliated suppliers to provide information and did provide such information in its response. (APPX084651 – 084729) The defendant also cites to letters which it requested to be transmitted to Tainai and then jumps to the conclusion that such letters were the first/only request for such information. This conclusion is not supported by the record. Initially, as dicsused above, Tainai did obtain and provide information from

7

one of its unaffiliated suppliers and supplied this information to the Department. Such information was supplied contemporaneous to the letters requested to be transmitted by the Department and thus such information must have been supplied pursuant to an earlier inquiry by Tainai. Furthermore, the Department never asked Tainai to provide details about its communications, only copies of the letters submitted.

Finally, the cooperation must be placed into the context of the COVID pandemic. As noted by Tainai, China was in the midst of major shutdowns and other complications resulting from the COVID pandemic. (APPX002673- 002674, APPX002693 – 002694, and APPX002705 – 002706). The pandemic significantly limited the maximum cooperation which could be obtained by Tainai and its unaffiliated suppliers.

In sum, based on the data and information of record it is clear that Tainai had insufficient power to compel its suppliers to provide data.

### C. The Department Cannot Fill the Gap with Partial AFA

At pages 21 to 23 of its response the defendant argued that the Department properly filled the gap by selecting facts otherwise available with adverse inferences. As discussed above, Tainai fully cooperated with the Department and the only failure of cooperation was that of Tainai's unrelated suppliers. As such, to the extent that data was needed to file the gaps, such data should not have been selected based

on adverse inferences. The defendant further claimed that as it was filling the gap with Tainai's own data, such data was somehow necessarily appropriate. In contrast, Tainai had provided alternate data extrapolated from the data from the related suppliers for the components in question. Tainai's extrapolated data was the appropriate "facts otherwise available" and was used as such in the preliminary results. As discussed in its 56.2 memo, the primary flaw with the Department's selection of adverse facts, is that the Department selected data without considering the relative sizes of the components, finding that articles of diverse sizes were comparable. As detailed in Tainai's memo, the size of bearings (and the total material consumed in the production of such bearings) varied greatly. The Department, however, used as adverse inferences the factor of production weights for the heaviest components rather than considering the critical issue of the weight of the actual bearing and the component. While it is true that the data in question is that of Tainai, such data is for a range of bearings of a specific size and weight. The fact that the data was supplied by Tainai is ultimately not relevant to the calculation.

The Department has not explained why the usage of factors of production based on the data of Tainai's largest bearings would produce results which accurate, reasonably related to the rate that would have been assigned, and not unduly punitive.

### D. *The Department Should Not Have Deducted Section 301 Duties from U.S. Price*

9

At pages 23 to 32 the defendant argues that the Department properly did not deduct Section 301 duties from U.S. price.  This issue was provisionally resolved against Tainai in *Shanghai Tainai Bearing Co., Ltd. v. United States,* Ct. No. 22-00038, (Slip Op. 23-132, Ct. Int'l Trade, Sept. 14, 2023) , and absent a reversal on appeal, plaintiffs have no further argument.

### E.  The Department Should Not Have Capped Payments Received from Tainai's Customers for 301 Duties

At pages 32 to 36 the defendant argues that the Department properly capped the 301 duty addition to U.S. price.  This issue was provisionally resolved in favor of Tainai in *Shanghai Tainai Bearing Co., Ltd. v. United States,* Ct. No. 22-00038, (Slip Op. 23-132,  Ct. Int'l Trade, Sept. 14, 2023) , and absent on a reversal on appeal, plaintiffs have no further argument.

### F.  The Department Should Have Granted a By-Product Offset

At pages 36 to 38 the defendant argues that the Department properly did not grant a By-Product offset.  This issue was provisionally resolved against Tainai in *Shanghai Tainai Bearing Co., Ltd. v. United States,* Ct. No. 22-00038, (Slip Op. 23-132, Ct. Int'l Trade, Sept. 14, 2023) , and absent on a reversal on appeal, plaintiffs have no further argument.

## III. CONCLUSION

Shanghai Tainai Bearing Co., Ltd. and Plaintiff C&U Americas, LLC submits that the arguments presented by defendant are unavailing and that this matter should be remanded to Commerce with instructions consistent with the points set forth in this memorandum. Specifically, the Court should find:

- That the Department improperly applied partial adverse facts to Tainai; and
- That the Department improperly capped certain payments and did not include such payments in U.S. price.

This matter should be remanded to the Department with direction that the Department modify the final results to correct the errors in the final determination.

Respectfully submitted,

/s/ David Craven
David Craven

Counsel to Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC

Dated: October 19, 2023

11